**SO ORDERED.**

**SIGNED this 21 day of December, 2007.**



_Dale L. Somers_
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line use and print publication

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In Re:

**CHRISTOPHER F. COREY,**                          **CASE NO. 07-20462**
                                                   **CHAPTER 7**
                            **DEBTOR.**

**MELNOR, INC.,**

                    **PLAINTIFF,**

**v.**                                             **ADV. NO. 07-6118**

**CHRISTOPHER F. COREY,**

                    **DEFENDANT.**

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS,
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Melnor, Inc. filed this adversary proceeding praying for denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and objecting to discharge of its claim against Debtor pursuant to 11 U.S.C. § 523(a)(2)(A).[1] The matters under advisement are: Defendant's Motion to Dismiss Complaint;[2] Plaintiff's Motion for Summary Judgment;[3] and Defendant's Cross Motion for Summary Judgment.[4] Plaintiff Melnor, Inc. (hereafter "Melnor") appears by Colin N. Gotham, of Evans & Mullinix, P.A. Defendant Christopher F. Corey (hereafter "Corey" or "Debtor") appears by Jeffrey R. Siegel, of The Siegel Law Firm. There are no other appearances.

## POSITIONS OF THE PARTIES.

Melnor's Complaint alleges that its claim for payment of a judgment entered in its favor against Debtor in the United States District Court for the District of Virginia is nondischargeable as a matter of law under § 523(a)(2)(A) because the judgment was based upon fraud and is binding upon the Debtor in dischargeability litigation under the doctrine of collateral estoppel. As to the § 727 (a)(4)(A) denial of discharge claim, Melnor relies upon an alleged false statement in Debtor's Schedule F.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). There is no objection to venue or jurisdiction over the parties.

[2] Doc. 12. The Motion to Dismiss is actually a motion for partial dismissal, as it addresses only the § 523(a)(2)(A) exception from discharge claim.

[3] Doc. 17. This pleading also includes a motion to amend the Complaint, in the event the Court does not grant summary judgment.

[4] Doc. 19.

2

Debtor moves to dismiss the § 523 count of the Complaint arguing the Virginia judgment has no collateral estoppel effect because the issue of fraud was not actually litigated. Melnor responds that the judgment does have collateral estoppel effect, even though the allegations of fraud were not litigated, because the judgment is based upon default entered as a result of Debtor's litigation misconduct.

Melnor moves for summary judgment on its § 523(a)(2)(A) claim based on the same arguments as presented in opposition to Debtor's motion to dismiss. As to the § 727 (a)(4)(A) allegation, Melnor relies exclusively upon alleged mischaracterization of its judgment on Debtor's Schedule F as a liability on a "business loan cosigned." Debtor opposes summary judgment on both counts and moves for summary judgment. Plaintiff moves to amend its Complaint, if the Court denies summary judgment on both counts.[5]

The Court will first address the § 523 (a)(2)(A) dischargeability claim and then separately address the objection to discharge under § 727 (a)(4)(A).

# I. THE § 523 (a)(2)(A) DISCHARGEABILITY CLAIM.

## A. FINDINGS OF FACT RELEVANT TO THE § 523(a)(2)(A) CLAIM OF NONDISCHARGEABILITY OF THE VIRGINIA JUDGMENT.

The facts concerning the Virginia Judgment are uncontroverted. Although the Court has not been provided a docket sheet or the complete record of the Virginia litigation, the following facts relating to the Virginia litigation of Melnor against Corey are evidenced by the document copies provided and the uncontroverted statements in the pleadings.

---

[5] The proposed amended complaint is in three counts: Court I - that Melnor's claim is not dischargeable based upon factual allegations of fraud; Court II - that Melnor's claim is not dischargeable based upon collateral estoppel effect of Virginia Judgment; and Count III - objection to discharge based upon alleged mischaracterization of Virginia Judgment on Schedule F.

3

On December 17, 2004, Melnor filed a complaint in the United States District Court for the Western District of Virginia against Corey and SKR Resources, Inc. The complaint alleged causes of action against both defendants for fraud, unjust enrichment, and constructive fraud arising out of a barter agreement between Melnor and SKR, whereby SKR agreed to deliver goods valued at $435,000 to Melnor in exchange for trade credits, in the form of airline travel, hotel accommodations and media advertising. Corey, the president and an employee of SKR, who signed the contract, was alleged to have made misrepresentations during telephone conversations prior to the formation of the barter agreement and to be liable for SKR's debt to Melnor as SKR's alter ego. Melnor prayed for compensatory damages of $435,000, punitive damages, and attorneys fees and costs. Default Judgment against Corey was filed on March 28, 2005. On April 6, 2005, Corey, "individually and through counsel," filed a motion to set aside the default.

On August 18, 2005, through counsel, a motion to dismiss the claim against Corey for lack of personal jurisdiction was filed. On August 31, 2005, through counsel, Corey opposed a motion to compel filed by Melnor. That pleading references a supplemental motion requesting a decision regarding lack of jurisdiction over SKR filed on August 26, 2005, a Motion to Dismiss or Change of Venue, and a Motion to Change the Scheduling Order. By letter dated September 15, 2005, SKR, by Christopher Corey, President, informed counsel for SKR and Corey that her services in the Virginia litigation were terminated. Counsel's motion to withdraw was filed on or about November 20, 2005 and was granted on December 9, 2005. Thereafter, Corey appeared pro se.

4

Motions to dismiss both SKR and Debtor were denied. By order dated November 10, 2005, the court directed the clerk to enter a default judgment against SKR. By memorandum opinion and order dated November 21, 2005, the court entered default judgment against SKR in the amount of $428,624.01 plus interest.[6]

On December 12, 2005, Corey filed an answer pro se, denying the allegations of the complaint and asserting as affirmative defenses that Melnor engaged in fraud as to the value of the goods and that the complaint failed to state a cause of action for fraud, constructive trust, or unjust enrichment. On March 30, 2006, the magistrate presiding over the Virginia litigation issued a report in part as follows:

> Upon Christopher Corey's proposal of March 28, 2006 as a suitable date to conduct a hearing on outstanding pretrial motions, the undersigned scheduled a hearing on his outstanding motion to compel. On March 10, 2006, a notice of hearing was sent to Christopher Corey via the United States Postal Service and to counsel for the plaintiff by electronic means. Without providing the court, or the opposition counsel with notice that he would not be present at the hearing, Corey simply did not appear at the March 28, 2006 hearing.
> Believing the monetary sanctions heretofore endorsed are not adequate, after the finding that Corey's conduct almost blatantly caused plaintiff to incur expenses preparing and attending the hearing, and finally noting that there have been prior occasions when matters were set before the court which Corey sought to avoid, it is
>
> RECOMMENDED
>
> that the presiding court consider sanctioning Christopher Corey by striking his defenses.

The District court considered the recommendation and on May 4, 2006 ruled as follows:

---

[6] By order filed on April 5, 2006, the judgment against SKR was increased to include prejudgment interest and attorney fees of $43,558.13. SKR filed for relief under Title 11 on July 20, 2006 in the United States Bankruptcy Court for the District of New Jersey, Case No. 06-16631.

5

This matter is before the court on the Report and Recommendation of United States Magistrate Judge Waugh Crigler, who recommends that the court strike defendant Christopher Corey's defenses as a sanction for Corey's failure to appear at a scheduled hearing and for Corey's overall failure to meaningfully participate in discovery. Neither party has filed objections. Having reviewed the Report and pertinent portions of the record, the court adopts the Report and Recommendation in its entirety and writes separately to note that this sanction is not simply a response to Corey's failure to appear at a single hearing but, rather, is the culmination of a course of obstructive behavior on the part of the defendants which has effectively prevented the court from proceeding to the merits of the underlying dispute.

Melnor essentially claims that SKR and Corey accepted over $400,000 in merchandise in exchange for services they never intended to provide. However, the record reflects a pattern of behavior on the part of the defendants seemingly aimed at preventing the court from ever reaching the merits of that claim. Federal Rule of Civil Procedure 37(b) authorizes the court to strike a party's defenses should he fail to cooperate in discovery. The record shows that Corey has obstructed the course of discovery by preventing the court from setting and completing essential hearings and by attempting to excuse his behavior by incredibly asserting that he has not received the court's notices. The court finds that striking Corey's defenses and moving forward to the issue of damages is the only way the court can advance this case toward its ultimate resolution. The court is satisfied that any lesser sanction would only enable further delays by Corey. Accordingly, the court ADOPTS Judge Crigler's Report and Recommendation in its entirety and hereby STRIKES Corey's defenses.

On May 23, 2006, after the May 4th order had "struck Corey's defenses as a sanction for his course of obstructive behavior," the district court was prepared to proceed to trial on the sole issue of damages. Pursuant to Corey's request, the court assembled a jury. Corey did not appear, and the court declared Corey in default. The court then proceeded to hear evidence on damages and held Melnor entitled to compensatory damages of $428,624.07, with interest at the rate of 6% from March 14, 2004 to the date of judgment, and $94,357.84 in attorney fees, as reasonable attorney fees to a successful plaintiff in a fraud action. These findings were memorialized in a

6

Memorandum Opinion filed on May 24, 2006, which started with the sentence, "Plaintiff Melnor, Inc., brings this diversity action against SKR Resources, Inc. (SKR) and Christopher Corey for fraud." A Judgment Order (hereafter the "Virginia Judgment") was filed on the same date. On July 17, 2006, Melnor filed the Virginia Judgment in the District Court of Johnson County.

On March 8, 2007, Corey filed for relief under Chapter 7.

## B. ANALYSIS AND CONCLUSIONS OF LAW ON THE § 523(A)(2)(A) CLAIM OF NONDISCHARGEABILITY OF THE VIRGINIA JUDGMENT.

Subsection 523(a)(2)(A), on which Melnor relies when asserting that its claim for payment of the Virginia Judgment is nondischargeable, provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
> * * *
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The subsection has been construed to permit fraud claims that creditors have successfully reduced to judgment to be excepted from discharge.[7] The amount excepted may include attorney fees and costs, in addition to compensatory damages.[8] Once a plaintiff establishes that money or property was obtained by fraud, any debt arising from the fraud is excepted from discharge, regardless of whether the debtor obtained any benefit from the fraud.[9]

---

[7] *Grogan v. Garner*, 498 U.S. 279, 290 (1991).

[8] *Cohen v. de la Cruz*, 523 U.S. 213, 217-223 (1998).

[9] *E.g., Muegler v. Bening (In re Muegler)*, 413 F.3d 980, 983 (9th Cir. 2005).

7

"[C]ollateral estoppel principles . . . apply in discharge exception proceedings pursuant to §523(a)."[10] Plaintiff Melnor in its nondischargeability Complaint and when moving for summary judgment alleges that the Virginia Judgment establishes its entitlement to an order of nondischargeability as a matter of law.[11] Debtor, when moving to dismiss the § 523(a)(2)(A) count and when opposing Melnor's motion for summary judgment, contends that the Virginia Judgment is not entitled to collateral estoppel effect because the fraud claim was not actually litigated in the Virginia litigation. Debtor raises no additional issues. Thus, the resolution of the dischargeability count requires the Court to determine a question of law: Whether collateral estoppel as applied to the Virginia Judgment precludes Debtor's litigation of his liability to Melnor for fraud and the amount of Melnor's fraud claim.[12]

The doctrine of collateral estoppel bars the relitigation of issues that have been tried in a prior lawsuit.[13] It may be used offensively when a plaintiff seeks to foreclose the defendant from litigating an issue which the defendant unsuccessfully litigated in a prior action.[14] Federal

---

[10] *Grogan*, 498 U.S. at 284, n.11.

[11] As stated above, the facts concerning the Virginia Judgment are uncontroverted. Pursuant to Fed. R. Bankr. P. 7056 and LBR 7056, Melnor's summary judgment motion should be granted if there are no material facts in controversy and Melnor is entitled to judgment as a matter of law.

[12] The Memorandum and Order expressly finds that Melnor brought the diversity action "for fraud." Attorneys fees were awarded under the authority of *Prospect Devel. Co., Inc. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 301 (Va. 1999). That case affirmed a finding of actual fraud and held "in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney fees to a defrauded party."

[13] *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

[14] *Id.*, 439 U.S. at 326, n.4.

8

principles of collateral estoppel apply to prior judgments that were rendered by a federal court.[15] Generally, in the Tenth Circuit, collateral estoppel bars the relitigation of an issue when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[16]

Corey asserts that the second element is not satisfied in this case because the Virginia Judgment was entered by default without trial.[17] Melnor argues that there is an exception to the judgment on the merits element which applies in this case. That exception, as stated by the Tenth Circuit, allows preclusive effect of a default judgment "where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment."[18] This exception depends upon the facts and circumstances of the previous litigation. Melnor's reliance on the exception to the actual litigated requirement places before this Court the question whether Corey's conduct in the Virginia fraud litigation was sufficiently obstructive for the Virginia Judgment to be binding in this dischargeability litigation.

---

[15] *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992)

[16] *Id.*

[17] Corey does not challenge the satisfaction of the other elements.

[18] *Trustees of the Colorado Laborers' Health and Welfare Trust Fund v. Sukut (In re Sukut)*, 357 B.R. 840, 845 (Bankr. D. Colo. 2006), quoting *In re Jordana*, 2000 WL 783401, *1 (10th Cir. 2000) (unpublished disposition).

9

Case law illustrates the requirement. The Tenth Circuit BAP in *In re Jordana*[19] affirmed summary judgment in favor of creditor McCart on her objection to the discharge of a claim based upon a default judgment entered against debtor in securities fraud litigation. The securities suit had been brought by McCart in federal court against Debtor for fraudulently inducing McCart to buy worthless securities. Debtor initially retained counsel, but counsel withdrew early in the proceedings. Although advised by the court to retain new counsel, debtor refused, "stating God was his counsel."[20] McCart served debtor with an amended complaint, to which he never responded, despite repeated admonishments from the court. Debtor did not respond to discovery requests, despite six letters from adverse counsel. Debtor absconded with the original copy of his deposition and refused to return it. McCart moved for default judgment, and the court issued an order to show cause directing debtor to respond in writing why a default should not be entered. Debtor's response was a letter alleging that McCart's lawyer had been lying about him, that McCart had told debtor's family that he should not be a party, and that his family knew that he was completely blameless. The district court entered a default judgment finding that debtor had "assiduously pursued a policy of obfuscation, refusing to cooperate in discovery and refusing to answer the plaintiff's First Amended Complaint, in spite of repeated warnings by both plaintiff's counsel and this Court."[21] The bankruptcy court gave preclusive effect to the prior judgment and granted McCart summary judgment under §§ 523 (a)(2)(A) and (B). The BAP affirmed, finding all elements of collateral estoppel present. Although

---

[19] *McCart v. Jordana (In re Jordana )*, 232 B.R. 469 (10th Cir. BAP 1999) aff'd 216 F. 3d 1087 (table) (10th Cir. 2000).

[20] *Id.*, 232 B.R. at 471.

[21] *Id.*, 232 B.R. at 472.

acknowledging the rule that a traditional default judgment, where a defendant is served but fails to appear and plead, is always subject to collateral attack, the BAP found debtor was "twisting the term 'default judgment'" when seeking to come within the rule. The court stated:

> Here the default was entered as a sanction where the debtor was properly served, filed an initial answer and given every opportunity to defend himself. He chose, however, to "assiduously pursue a policy of obfuscation" to frustrate the judicial process . . .. He had every opportunity to litigate the fraud claims against him. This is not a default judgment in the sense of the cases he cites. Allowing him to relitigate the District Court judgment would reward his misbehavior.[22]

The BAP's decision was affirmed by the Tenth Circuit in an unpublished opinion.[23]

Several other circuits have sanctioned the use of collateral estoppel to preclude defense of claims of nondischargeability of fraud default judgments entered as a sanction in prior litigation. The Ninth Circuit adopted the exception in *In re Daily.*[24]  The FDIC had been granted relief from stay to pursue in the United States District Court for the District of Kansas a RICO claim against debtor, asserting that he had obtained money from Indian Springs State Bank by various fraudulent acts. The FDIC sought discovery from debtor, but nothing was forthcoming. After unsuccessfully pressing its requests for two years, the FDIC moved for sanctions under

---

[22] *Id.*, 232 B.R. at 476.

[23] *In re Jordana*, 216 F.3d 1087 (table), 2000 WL 783401 (10th Cir. 2000).

[24] *FDIC v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir. 1995).

11

Federal Rule 37.[25]  The district court held a hearing and found:

> . . . Daily's failure to provide discovery "was the result of a deliberate, dilatory course of conduct," that Dailey had "chose[n] to delay responses until delay was no longer an option," and that Dailey's "strategy of delay and evasiveness . . . [had] significantly prejudiced the plaintiffs . . . [and had] significantly interfered with the judicial process."[26]

All allegations of the complaint were deemed admitted, and a default judgment was entered for the amount of the prayer.  The Tenth Circuit affirmed the judgment.[27]  In the bankruptcy court dischargeability litigation, the court held the Kansas court's order and judgment in the RICO case  established the element of actual fraud and the facts thereby established were sufficient to

---

[25] Fed. R. Civ. P. 37(d)(2006). It provided in part:

(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.  If a party . . . fails (1) to appear before the officer who is to take the deposition . . ., or (2) to serve answers or objections to interrogatories submitted under Rule 33 . . ., or (3) to serve a written response to a request for inspection . . ., the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.  . . .

Fed. R. Civ. P. 37(b)(2)(B) and (C), referred to above, provided:

(2) Sanctions by Court in Which Action is Pending. If a party . . . fails to obey an order to provide or permit discovery . . . , the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\*\*\*

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

[26] *In re Dailey*, 47 F.3d at 367.

[27] *FDIC v. Dailey*, 973 F.2d 1525 (10th Cir. 1992).

12

preclude discharge of Dailey's debt to the FDIC under § 523(a)(2)(A). The Hawaii District Court affirmed. On appeal, the Ninth Circuit held that the RICO judgment was not an ordinary default judgment. "Daily did not simply decide that burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear;"[28] he obstructively participated in the litigation for two years before the default was entered. "A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication."[29] In these circumstances the actual litigation requirement of collateral estoppel is satisfied by the "substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so."[30]

The Eleventh Circuit, in *In re Bush*,[31] found *Daily* persuasive.[32] Bush had been sued by Balfour for fraud in federal district court. He answered, filed a counterclaim, and engaged in discovery for several months. After his counsel was allowed to withdraw because of difficulty in contacting his client, Bush failed to produce exhibits and to appear for a deposition, despite three reminder letters. Bush responded to a motion for sanctions under Rule 37(d), but then failed to appear for a pretrial conference. After hearing argument on the motion for sanctions, the court entered judgment in accord with the complaint. There was no objection to the default and no

---

[28] *In re Daily*, 47 F.3d at 368.

[29] *Id.*

[30] *Id.*

[31] *Bush v. Balfour Beatty Bahamas, Limited (In re Bush)*, 62 F.3d 1319 (11th Cir. 1995).

[32] *Id.*, 62 F.3d at 1325.

appeal.  After Bush filed bankruptcy, Balfour filed a complaint objecting to discharge of its

default judgment.  Balfour was granted summary judgment holding that Bush was estopped to

deny the fraud alleged in the district court complaint.  The district court affirmed the bankruptcy

court.  On appeal, the Eleventh Circuit distinguished the case from those in which a default

judgment is not entitled to collateral estoppel effect, identifying the underlying rationale as not

barring "a party [who] may decide that the amount at stake does not justify the expense and

vexation of putting up a fight."[33]  This was contrasted with the unfairness of giving a

debtor/defendant a second bite at the apple when he actively participated in the action for an

extended period of time and then engaged in "dilatory and deliberately obstructive conduct,"

which resulted in a default judgment.[34]  The court observed that allowing such a debtor to deny

fraud in a subsequent § 523 action by blindly denying preclusive effect to a default judgment

would reward abuse of the judicial process.[35]

The Third Circuit in *In re Docteroff*[36] in dischargeability litigation likewise applied the

exception to the actually litigated element of collateral estoppel.  Prepetition Debtor Docteroff

was sued in federal court by Wolstein for fraud in the diversion of progress payments on the

construction of a yacht.  Default judgement was entered on liability after debtor "repeatedly and

in bad faith refused to submit to properly noticed depositions or respond to numerous legitimate

---

[33] *Id.*, 62 F.3d at 1324, *quoting In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983).

[34] *Id.*, 62 F.3d at 1324.

[35] *Id.*

[36] *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3rd Cir. 1997).

14

requests for the production of documents despite court orders and warnings."[37]  On the day the

trial on damages was to begin, Docteroff filed for relief under Chapter 11.  In subsequent

dischargeability litigation under §§ 523 (a)(2)(A), (a)(4), and (a)(6) plaintiff alleged that debtor

was estoppped from denying that he had defrauded and embezzled money in connection with the

yacht construction contract.  The bankruptcy court granted summary judgment to the creditor,

and the district court affirmed.  On appeal, the Third Circuit rejected Docteroff's assertion that

collateral estoppel did not apply because he did not actually litigate any issue in the prior law

suit.  The court stated:

> Docteroff had every opportunity to fully and fairly litigate any
> relevant issue in the district court. . . . Docteroff simply elected not
> to comply with court orders.  This is not the typical default
> judgment where a defendant neglects or elects not to participate in
> any manner because of the inconvenience of the forum selected by
> the plaintiffs, the expense associated with defending the lawsuit, or
> some other reason. . . .
>
> We do not hesitate in holding that a party such as Docteroff, who
> deliberately prevents resolution of a lawsuit, should be deemed to
> have actually litigated an issue for purposes of collateral estoppel
> application. . . . To hold otherwise would encourage behavior
> similar to Docteroff's and give litigants who abuse the processes
> and dignity of the court an undeserved second bite at the apple. We
> reject such a result.[38]

The Court finds that Corey's behavior falls squarely within the rule of the foregoing

cases.  Collateral estoppel precludes Debtor from raising any defense to the allegation that

Melnor's Virginia Judgment was for actual fraud for purposes of § 523(a)(2)(A).  As found by

the Virginia district court, all of Debtor's defenses to the fraud claim were stricken because of

---

[37] *Id.*, 133 F.3d at 213.

[38] *Id.*, 133 F.3d at 215.

his "overall failure to meaningfully participate in discovery," with "Corey's failure to appear at a single hearing . . . [being] the culmination of a course of obstructive behavior on the part of the defendants which has effectively prevented the court from proceeding to the merits of the underlying dispute."

The only case cited by Corey in support of his position that the Virginia Judgment has no preclusive effect is *In re Gilson*.[39]  In that case, a default judgment was entered in post-petition federal district court litigation after debtor declined to participate in discovery or trial on damages to protect her Fifth Amendment rights.  The bankruptcy court rejected the creditor's argument that collateral estoppel barred defense to a dischargeability complaint even though the issues of fraud and damages had not been actually litigated.  The court distinguished *Daily* and *Bush* on the basis that debtor did not hinder and delay the judicial process, did not create unnecessary hurdles, did not create needless expenses, and expressed a legitimate motivation of protecting her Fifth Amendment rights.

Corey cannot similarly distinguish *Daily*, *Bush*, and the other cases discussed above.  The record of abusive conduct is clear.  Rather, Corey argues a technicality - that the Virginia Judgment is not a default judgment as a sanction for abusive conduct but is a default judgment for failure to appear for trial on damages.  The Court rejects Corey's contention.  This Court views the striking of all defenses as a sanction under Rule 37(d) as equivalent to the entry of a default judgment on liability for purposes of collateral estoppel.  At that time, the Virginia Court

---

[39] *Fed. Ins. Co. v. Gilson (In re Gilson)*, 250 B.R. 226 (Bankr. E.D. Va. 2000).  An additional case where a default judgment was not given preclusive effect include *Elletson v. Riggle (In re Riggle)*, 2007 WL 2332141 (D. Colo. 2007) (only evidence of willfulness or bad faith proffered was bare assertion that the state court ordered sanctions for failure to comply with orders to compel discovery, where applicable state law permitted the imposition of sanctions for negligence).

16

could have entered judgment for the amount of the prayer, as did the court in *Daily*, and the resulting money judgment would have been entitled to preclusive effect. However, the Virginia court, like the trial court in *Docteroff*, elected to have a trial on damages. At Debtor's request, a jury was assembled, but Debtor did not appear. Compensatory damages (in an amount slightly less than the prayer), interest, and fees were determined by the court, and a judgment entered accordingly.

To hold that the resulting monetary judgment was a traditional default judgment not entitled preclusive effect because its immediate impetus was Debtor's failure to appear for trial would ignore the circumstances of the Virginia case. The failure of appear at the damage trial was an abuse of court process, the seriousness of which was compounded by Corey's established history of abusive conduct in the case. A holding that the default judgment was for the everyday occurrence of failure to appear rather than abusive conduct would reward not only the discovery and pretrial preparation abusive conduct which resulted in the striking of defenses but also Debtor's abuse of court process by requesting a jury and then, without excuse, not appearing for trial. This later conduct, as well as the abusive conduct which preceded the formal entry of judgment, provide the basis for this Court to conclude that Debtor is precluded by the doctrine of collateral estoppel from litigating either his liability to Melnor for fraud or the amount of that liability.

### C. CONCLUSION ON DISCHARGEABILITY OF MELNOR'S CLAIM.

For the foregoing reasons, the Court holds that Corey is collaterally estopped to challenge the fraud judgment entered by the Virginia court. Accordingly, Corey's motion to dismiss the § 523(a)(2)(A) count of the Complaint is denied and Melnor's motion for summary judgment on

17

the § 523(a)(2)(A) nondischargrability of the claim for satisfaction of the Virginia Judgment is granted.

## II. THE § 727(a)(4)(A) CLAIM FOR DENIAL OF DISCHARGE.

### A. FINDINGS OF FACT ON THE § 727(a)(4)(A) CLAIM FOR DENIAL OF DISCHARGE BASED UPON FALSE STATEMENT UNDER OATH IN BANKRUPTCY SCHEDULE F.

The uncontroverted facts stated above with respect to the assertion of nondischargeability under § 523(A)(2)(A) provide the background for the § 727 objection to discharge.  It is also uncontroverted that Debtor's Schedule F, creditors holding unsecured nonpriority claims, includes a joint debt owed to Melnor in the amount of $525,000 on a "business loan cosigned." Debtor's statement of financial affairs, in response to question 4, suits and administrative proceedings, executions garnishment and attachments, lists *Melnor Inc. v. SKR Resources & Christopher Corey*, with the Johnson County District Court case number.  It also states that Melnor, Inc., whose address is in the schedules, seized property in December 2006.

Additional facts relevant to objection to discharge are controverted.  Melnor, when moving for summary judgment, states, without citation to the discovery record or an affidavit: "At the time Corey signed the Petition, he knew that this entry was false and fraudulent, and that the debt owed to Melnor was not for a 'business loan cosigned' but rather was for a Judgment entered by the Virginia Court for fraud.'"[40]

Corey controverts by affidavit.  He states in part that the Virginia action involved a written contract dated July 19, 2003, that during a conversation at a deposition conference in the Virginia litigation counsel for Melnor told Corey that if he had written president by his name

---

[40] Doc. 17.

when signing the contract "none of this would be going on;" that Corey understood the nature of the case to be that he was liable because he signed on behalf of SKR without putting president by his name; that "Mr. Corey gave both the judgment and the contract to his bankruptcy counsel, David S. Adams, who prepared the Schedule F, and decided on the description of the debt; and that Mr. Corey truthfully stated his understanding of the nature of the obligation as arising from a written contract which he signed on behalf of SKR."[41]

In response, Melnor controverts Corey's statements regarding his understanding of the nature of the Virginia action by referring to the Virginia complaint. Corey's statement regarding the basis for his personal liability is also controverted by reference to the Virginia complaint which alleged that "because SKR was not and is not a properly existing corporate entity, Corey, as an officer, director and/or principal of SKR, is the alter ego of SKR and is personally liable for the debts and actions of SKR."[42]

### B. ANALYSIS AND CONCLUSIONS OF LAW ON THE OBJECTION TO DISCHARGE PURSUANT TO § 727(a)(4)(A).

Both Melnor and Corey have moved for summary judgment on the objection to discharge count of the Complaint. The standard for summary judgment is well established. A motion for summary judgment will be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[43] The substantive law governing the claim determines which facts are material.[44]

---

[41] Doc. 19.

[42] Doc. 21.

[43] *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).

[44] *Id.*, 477 U.S. at 248.

Subsection 727(a)(4)(A)**,** on which Melnor relies when objecting to Corey's discharge, provides that "the court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." "In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact."[45] A common instance of "false oath" is when a debtor declares that under oath that schedules are true and correct and it appears that assets have been omitted or false statements made.[46] Neither honest errors nor mere inaccuracies are a proper basis for denial of discharge.[47] A false oath that has no effect on the estate is not grounds for denying discharge.[48]

In this case, Melnor's sole basis for objecting to discharge pursuant to § 727 (a)(4)(A) is the characterization of Debtor's obligation to Melnor on the Virginia Judgment as a "business loan cosigned." Although the Court will assume for purposes of this analysis that the description of the obligation was false, the Court denies Melnor's motion for summary judgment for two reasons. First, there is a material issue of controverted fact concerning the requirement the false statement be made knowingly and fraudulently. Melnor relies upon Debtor's knowledge of the Virginia litigation as circumstantial evidence that the description was knowingly and fraudulently false. Melnor provides no affidavit or reference to the discovery record. Debtor responds by affidavit that he truthfully understood the stated nature of the judgment to be true.

---

[45] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997).

[46] 6 *Collier on Bankruptcy* ¶ 727.04[2] (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2007).

[47] *In re Brown,* 108 F.3d at 1294.

[48] 6 *Collier on Bankruptcy* ¶ 727.04[1][b].

Debtor further states that his counsel, not he, determined the description of the obligation. Reasonable reliance upon the advice of counsel is an accepted defense to a § 727(a)(4)(A) objection to discharge claim.[49]

Second, Melnor has not established that the alleged mischaracterization of the obligation is material. Melnor has presented no uncontroverted facts showing the materiality of whether the Virginia Judgment is characterized as a "business loan cosigned" or as a judgment for fraud arising from a business contract. There is no evidence that the case trustee or creditors were misled or that the estate was impacted. The lack of materiality of the description of the Melnor debt is enhanced by the fact that Debtor's Statement of Financial Affairs lists the judgment of Melnor Inc. against SKR Resources and Christopher Corey, giving the Johnson County District Court case number. The statement of affairs also reports the prepetition seizure of property by Melnor. The judgment and its relationship to the debt owed to Melnor are disclosed. Even if the description were found to have been knowingly and intentionally false, Melnor has provided no evidence that such a misdescription had any impact on the estate. Melnor's motion for summary judgment on its objection to discharge is denied.

Next, the Court addresses Debtor's cross motion for summary judgment on the objection to discharge. Summary judgment in favor of Debtor, who does not have the burden of proof, should be entered if the party objecting to discharge has insufficient evidence to prevail as a matter of law. The Debtor, as the moving party, bears the initial burden to establish its "presumptive entitlement to summary judgment in the absence of an adequate response by the

_____

[49] *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 958 (Bankr. N.D. Ind. 1988) (collecting numerous cases addressing the defense).

nonmovant."[50] "In moving for summary judgment against a party who will bear the ultimate

burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of

evidence to support an essential element of the nonmoving party's claim."[51] "Once the movant

has sustained this initial burden of production, the burden shifts to the nonmovant to show the

court that there is in fact a genuine issue for trial"[52] and to "articulate a legal argument

precluding summary judgment on the record before the court."[53]

    As Melnor points out, Debtor's motion does not comply with the procedural requirements

applicable to summary judgment motions with respect to the submission of a statement of

uncontroverted facts in support of his motion.  This deficiency makes it difficult  for the Court to

determine the precise facts on which Debtor relies when moving for summary judgment.

However, the record is clear as to the controverted and uncontroverted facts relating to Melnor's

motion.  Examination of the summary judgment pleadings provides no reason to find these same

record facts should not determine consideration of Debtor's cross motion for summary judgment.

    When responding to Melnor's motion and when moving for summary judgment, Debtor

states by affidavit that Schedule F was prepared by bankruptcy counsel, not Debtor, and believed

to be true.  Melnor's reply brief argues that Debtor's belief is incredible in light of his

participation in the Virginia litigation and that any reliance upon bankruptcy counsel was not

_____

[50] 11 *Moore's Federal Practice - Civil* § 56.13[1] (2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for the motion").

[51] *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2nd Cir. 1995);  *see Celotex Corp. v. Catrett*, 477 U.S. at 324-26.

[52] 11 *Moore's Federal Practice - Civil* § 56.13[2] (2007), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[53] *Id*. at § 56.13[4].

reasonable based upon the Virginia Judgment, a copy of which Corey states was given to his attorney. With respect to the cross motion for summary judgment, as with the Melnor's motion for summary judgment, the Court finds material issues of disputed facts as to the element of Debtor's allegedly knowingly and fraudulent making a false statement. Summary judgment is seldom granted on issues of intent, and Debtor's affidavit is insufficient for him to be entitled to judgment as a matter of law on this question, given the inferences arising from Debtor's complete knowledge of the nature of the obligation.

In support of summary judgment, Debtor also argues that Melnor "cannot show, as a matter of law, that the characterization of the debt was material to any issue in the bankruptcy or this [adversary] case."[54] In response, Melnor argues that the description is material because the subject matter of the statement relate to Corey's business transactions and dealings and "because it is the major unsecured debt of Corey."[55] The Court rejects Melnor's position. Melnor's view of the law improperly focuses on the subject matter of the statement, not the impact of the statement. Melnor has offered no evidence showing any impact on the estate, the case trustee, or creditors. Moreover, Melnor has provided no case authority that the mischaracterization of a single scheduled debt, however important, is ever a sufficient basis standing alone to deny discharge. The Court declines to find this one alleged misstatement material, particularly where more detail of the debt is disclosed in the Statement of Financial Affairs. Denial of discharge is a severe sanction which this Court rarely finds warranted. The facts of this case do not include

---

[54] Doc. 19.

[55] Doc. 21.

the quality or quantity of fraudulent statements which this Court requires before depriving a

debtor pursuant to § 2727 (a)(4) of one of the primary benefits of Chapter 7.

### C. CONCLUSION ON OBJECTION TO DISCHARGE.

For the foregoing reasons, Corey is granted summary judgment on the § 727 (a)(4)(A)

allegation. Melnor has provided no evidence from which the Court could find that the alleged

mischaracterization of the nature of the debt owed to Melnor is material, as required for denial of

discharge.

### CONCLUSION.

The Court holds that Melnor's claim against Corey for payment of the Virginia Judgment

is excepted from discharge pursuant § 523(a)(2)(A). Because the Virginia Judgment was entered

by default as a sanction for Debtor's abusive litigation conduct, collateral estoppel bars Corey

from litigating whether the claim is a debt for money, property or services obtained by fraud and

the amount of the debt. As to the dischargeability claim pursuant to § 523(a)(2)(A), Corey's

motion to dismiss is denied, Melnor's motion for summary judgment is granted, and Corey's

cross motion for summary judgment is denied.

Summary judgment is granted to Corey on the objection to discharge pursuant to §

727(a)(4)(A). The alleged mischaracterization of Melnor's claim for satisfaction of the Virginia

Judgment is not a false statement knowingly and fraudulently made by Corey that relates to a

material fact. Melnor's motion for summary judgment on the objection to discharge count is

denied.

24

Melnor's motion for leave to file an amended complaint is denied as moot. The Court has disposed of the Complaint by granting Melnor's dischargeablity count and granting Corey summary judgment of the objection to discharge count.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

### ###

25